*In re* ESTATE OF FRED HOCHNER, Deceased.—(JOSHUA LANDAU, Adm'r of the Estate of Fred Hochner, Deceased, Petitioner-Appellant, *v.* ADELINE FOREMAN, Respondent-Appellee.)

(No. 60012;

First District (4th Division)—August 13, 1975.

Charles Kraut, of Chicago, for appellant.

Arthur B. Mendelson, of Chicago, for appellee.

Mr. JUSTICE BURMAN delivered the opinion of the court:

This is an action commenced by the administrator of the estate of Fred Hochner, deceased, to recover assets in the amount of $12,442.84 withdrawn by Adeline Foreman from two savings accounts held in her name and the deceased's as joint tenants. After hearing evidence, the court held in favor of Mrs. Foreman. Subsequently, Mrs. Foreman filed

a claim for reimbursement of funeral and monument expenses in the sum of $1,462.00, which was allowed over the objection of the administrator. The administrator appeals from both judgments.

On appeal the administrator contends that the funds were deposited by the deceased in joint tenancy as convenience accounts only, and that the evidence adduced at trial overcame the presumption of donative intent by the deceased. The administrator also contends that the claim for funeral and monument expenses should not have been allowed.

■■ The question of who is entitled to funds on deposit in a joint account upon the death of the depositor is one that has troubled the courts for some time. Fortunately, in Illinois the conflict has been resolved in part. In *Murgic v. Granite City Trust & Savings Bank*, 31 Ill.2d 587, the surviving joint tenant brought an action for the proceeds of a savings account to which he made no monetary contributions. He was a friend of the deceased, but was not related to him. In affirming a judgment in his favor, the supreme court held that "an instrument creating a joint account under the statutes presumably speaks the whole truth; and, in order to go behind the terms of the agreement, the one claiming adversely thereto has the burden of establishing by clear and convincing evidence that a gift was not intended. This burden does not shift to the party claiming under the agreement." (31 Ill.2d 587, 591.) Accordingly we must now determine whether the evidence in the case at bar overcomes the presumption of donative intent by clear and convincing proof.

The evidence reveals that Fred Hochner and his wife, Jeanette, had been married over 50 years. They held joint bank accounts in the La Salle National Bank of Chicago and the Mid City National Bank. On February 24, 1972, Jeanette Hochner predeceased her husband. During the following month, Fred Hochner went to the aforementioned banks with his wife's sister, Adeline Foreman, and transferred the savings accounts into joint tenancy with her. It is undisputed that the transfer was effectuated in accordance with bank rules. Fred Hochner died on March 19, 1973, at the age of 80 years leaving a nephew as his only heir-at-law. Prior to his death, he made no attempt to change the accounts that he had created in joint tenancy with Mrs. Foreman. The only additional entry in the accounts was a $500 deposit by him in the La Salle National Bank made approximately 2 months after the change of joint tenancies had been effectuated. Shortly after Fred Hochner's death, Adeline Foreman withdrew the monies at both banks as surviving joint tenant.

Adeline Foreman testified that she had been in constant communication with the deceased via telephone after her sister died. She related that Fred Hochner called her about 1 month after her sister passed away and asked her to meet him downtown. She said that he wanted to see

her and that he said he had something to give her. They met downtown and had lunch together. Thereafter, they went to the two banks where Fred Hochner executed the necessary documents for the transfer of his accounts into the joint tenancy. Mrs. Foreman further testified that all of the money in the accounts did not belong to the deceased and his wife. She explained that 20 or 30 years ago she and her father had loaned the deceased and his wife money to prevent a foreclosure of their property, but that they did not bother to ask repayment.

Beula Banks was called as a witness by the administrator. She testified that she became acquainted with Fred Hochner when she moved into the house on the back of his lot where she resided for about 7 years. She stated that he was deaf and losing his mind. When asked whether he ever talked about his relatives, she replied that he said he had a nephew somewhere in Florida, but he did not know where he was and had not seen him since he was a boy. He complained that Mrs. Foreman kept calling him and stated that he wanted to disconnect his phone. He further told her that all Mrs. Foreman wanted was for him to die so that she could get his money. He said he did not want her to have any of it and he was going to take her name off of his books. Beula Banks also testified that she fed and took care of Fred Hochner after his wife died. On cross-examination she said that she once asked Mrs. Foreman to loan her money, but that Mrs. Foreman did not do so.

Robert A. Friedman also was called as a witness by the administrator. He testified that he was 43 years of age and resided in California. He was a nephew of Jeanette Hochner and her sister, Adeline Foreman. From the age of 8 to 21 years he lived with the Hochners. He stated that to his knowledge, nobody ever loaned Fred Hochner money and that he was never hard up for money. Friedman testified that after Jeanette Hochner's death, he visited Fred Hochner at his home and discussed his money with him. Fred Hochner stated that Mrs. Foreman was harassing him to put her name on his books. He said she had not been nice to him and questioned why he should give her anything. Friedman further testified that Fred Hochner told him that he would put her name on his bank books because she was an adult, and if he got sick she could take the money out for him. Friedman described the deceased as a recluse, and stated that he was befuddled. On cross-examination he said that Mrs. Foreman and Fred Hochner did not enjoy a pleasant relationship over the last few years.

The administrator contends that the deceased was old, frail, and befuddled at the time he opened the joint accounts with his sister-in-law, Adeline Foreman. He argues that the testimony of the witnesses overcame the presumption of donative intent inasmuch as the evidence estab-

lishes that the accounts either were ones of convenience or were intended to be a repayment of a loan and not a gift.

The administrator relies on *In re Estate of Aksenas*, 14 Ill.App.3d 809, 303 N.E.2d 473, and claims that it closely parallels the instant case. We are not in accord. In *Aksenas* the deceased added the name of Paul J. Pazell who was not related to him, as joint tenant to his bank account. He died leaving his father as his only heir-at-law. At trial Pazell testified that the purpose of adding his name to the passbook was that in the event Aksenas predeceased his father, Pazell would see to it that his father would be paid $150 per month during his lifetime for his needs. The administrator also filed an amended citation wherein it was alleged that the decedent and Pazell informed an employee of the bank that the decedent desired to provide for his father in the event that anything happened to him. We held that Pazell by his own testimony conceded that the joint account was opened under a convenience solely for the benefit of the decedent's father. There is no such testimony in the case at bar. No evidence was offered that Fred Hochner ever indicated to any employee of either bank that he was opening the joint accounts for the benefit of someone other than Adeline Foreman.

The evidence indicates that the deceased left his home and went into the loop for the sole purpose of meeting Adeline Foreman. Together they went to two banks where he transferred his savings accounts into joint tenancy with her. Mrs. Foreman testified that he appeared to be in good health at the time. There is no evidence that Fred Hochner ever went to or called anyone at the banks for the purpose of changing the accounts he created. The only additional entry was a $500 deposit in the La Salle account made approximately 2 months after the change in accounts had been effectuated. In the brief filed by the administrator, it is contended that the $500 deposit necessarily was made by Fred Hochner. But again this only indicates that the deceased went to the bank a second time, and although he had an oportunity to withdraw the funds or change the status of the account, he did not do so. Thus, we can only conclude that he desired to have the funds in joint tenancy with Mrs. Foreman.

We reject the administrator's contention that the placement of funds in joint tenancy was intended to be a repayment of a loan and not a gift. Whatever merit there is to this argument, the supporting evidence certainly falls short of clear and convincing proof. Had the deceased intended to pay back a $5,000 loan, he certainly could have accomplished this in a more traditional and direct manner than by replacing $12,000 in joint tenancy.

Much argument is made by the administrator that the testimony of Adeline Foreman was concocted and unbelievable. Suffice it to say that

the trial judge saw and heard the witnesses and was in a superior position to determine their credibility and the weight to be afforded their testimony. The trial court held that the presumption of donative intent was not overcome by clear and convincing evidence. The record supports the conclusion that the joint accounts were understandably created for the purpose of making gifts to Adeline Foreman.

■■ We reject the administrator's argument that the claim for funeral and monument expenses should have been disallowed. Section 192 of the Probate Act provides for the filing of claims against the estate. (Ill. Rev. Stat. 1973, ch. 3, par. 192.) Section 202 provides that funeral expenses (which include monuments) are a "1st" claim against the estate. (Ill. Rev. Stat. 1973, ch. 3, par. 202.) The administrator's argument that the claim was not notarized as required by statute was not raised in trial court and is therefore waived. The record shows that Adeline Foreman received a lump sum benefit of $255 from the Social Security Administration as a result of her payment of the funeral bill. We assume that the money paid to her will be set off against her claim.

The judgment of the Circuit Court is affirmed.

Judgment affirmed.

DIERINGER, P. J., and ADESKO, J., concur.